## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

In re:

Harvey C. Jackson, Jr.,
**Debtor,**

Harvey C. Jackson, Jr.,
**Plaintiff,**

-vs-

Citi Mortgage,
**Defendant,**

Case Number **14-43765**
Chapter 13
Honorable Judge Bruce W. Black
Adversary Proceeding Number

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
FEB 17 2016
JEFFREY P. ALLSTEADT, CLERK
PS REP. - CM

## PLAINTIFF HARVEY C. JACKSON'S
## ADVERSARY COMPLAINT

NOW COMES the Plaintiff Harvey C. Jackson, Jr., "Jackson" pro se litigant, pursuant to Federal Rules of Bankruptcy Procedure Rule 7001, Part VII(2) and (9) and hereby presents his cause of action for a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d); and a proceeding to obtain a declaratory judgment relating to any of the foregoing as follows:

## INTRODUCTION
## AND
## STATEMENT OF FACTS

[1] On October 10th, 2006, Plaintiff, Harvey C. Jackson, Jr., [hereafter, Jackson] purchased a mortgage loan, in the amount of $192,000.00, from Argent Mortgage Company, LLC.

[2] The parties to the aforesaid [mortgage loan] transaction are Argent Mortgage Company, LLC, the original lender, and Jackson, the borrower, mortgagor. MERS [Mortgage Electronics Registration Systems, Inc.,] was not a party.

-1-

[3] Citi Mortgage "Citi" filed a Complaint to Foreclose Mortgage filed the instant foreclosure action on or about April 16, 2010. Citi attached to the Complaint to Foreclose Mortgage 2 exhibits: an Adjustable Rate Note, bearing neither a blank or special indorsement, and the Mortgage. [See attached Adjustable Rate Note, Exhibit A].

[4] The Complaint to Foreclose Mortgage did not disclose, either in the caption or allegations of fact, that Jackson's mortgage loan was securitized into the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2.

## ASSIGNMENTS INTRODUCED IN
## CHANCERY COURT

[5] Contained in the Chancery record is a document titled "Assignment of Mortgage Deed," showing an effective date of February 11th, 2009. The assignment purports to describe the following transaction(s):

"that CitiResidential Lending, Inc., As Attorney-In-Fact for Argent Mortgage Company, LLC assigns the instant indebtedness to Mortgage Electronics Registration Systems, Inc., [hereafter, MERS], as nominee for Citi Mortgage." [See attached Assignment of Mortgage Deed, Dated February 11, 2009, Exhibit B].

[6] "It is worth noting that the aforesaid assignment does not disclose the existence of the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2." " Trust 2007-AMC2"

[7] The Assignment of Mortgage, dated March 16, 2010, represents MERS as the assignor and MERS assigns said Mortgage to CitiMortgage, Inc. Again, the Trust 2007-AMC2 is not contained on the face of this Assignment of Mortgage and is not mentioned or alluded to in Citi's pleadings or moving papers. [See attached Assignment of Mortgaged, dated March 16, 2010, Exhibit C].

[8] On March 17, 2014, Citi Mortgage filed a document titled "Corrective Assignment of Mortgage." The March 17th, 2014, Corrective Assignment of Mortgage describes the following transactions on it's face: MERS, as nominee for Citi Mortgage, assigns Jackson's mortgage loan to the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2; U.S. Bank National Association is stated to be the Trustee and Assignee:

"this assignment is being recorded to correct the Assignee and Assignor Names on a previously recorded assignment dated March 16, 2010 recorded April 01, 2010 as Instrument Number R2010033617; Original Beneficiary: Argent Mortgage Company, LLC; Originally Recorded On: 10/30/2006; and that the subject property is at 2852 Stonewater Drive, Naperville, Illinois." [See attached Corrective Assignment of Mortgage, Dated March 17, 2014, Exhibit D].

[9] Plaintiff Harvey C. Jackson, Jr., "Jackson" filed the instant Chapter 13, Petition on December 8, 2014. Initially, Citi Mortgage represented itself as the Creditor; and on January 19, 2015, filed proof of claim documents containing a mortgage note bearing a special indorsement to Citi Mortgage.

[10] Sometime in December of 2015 or January of 2016, either Citi Mortgage or U.S. Bank National Association, filed a Motion for Relief from the Automatic Stay: the automatic stay that had been in place for a year or more.

[11] Examination of the aforesaid motion clearly shows that U.S. Bank National Association alleges that it is the note holder and creditor although Citi Mortgage did not file a substitution of creditor motion or otherwise put the Court or Jackson on notice of the substitution of creditors. Federal Rules of Bankruptcy Procedure, Part VII-Adversary Proceedings Rule 7025 [Subject to the provisions of Rule 2012, Rule 25].

[12] ] On January 19, 2015, Citi filed Proof of Claim Documents in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division relative to a Chapter 13, Bankruptcy Petition Jackson filed [Case # 14-43765].

Contained in the Proof of Claim Documents was a mortgage note, identical to the mortgage note attached to the August 16, 2010, Complaint except the mortgage note contained in the Proof of Claim Documents contains a special endorsement to Citi Mortgage.

## JACKSON'S ARGUMENT RELATIVE TO THE ADJUSTABLE RATE NOTE DATED OCTOBER 10, 2006

[13] Jackson states that the Adjustable Rate Note attached to the Complaint to Foreclose Mortgage is not endorsed in blank nor bears a special indorsement-arguing that because the note is not endorsed in blank nor contains a special indorsement that Citi Mortgage is not the legal holder of the indebtedness or legal in party in interest. [810 ILCS 5/3-109 and 810 ILCS 5/3-204]. [See attached Adjustable Rate Note, Exhibit A].

[14] It is axiomatic that the note [negotiable instrument] can only be transferred or negotiated by blank indorsement, rendering the note bearer paper creating holder status by physical possession alone; or by special indorsement which specifically identifies the transferee of the note. 810 ILCS 5/3-109 [Payable to Bearer or to Order] 810 ILCS 5/3-201 [Negotiation] 810 ILCS 5/3-203 [Transfer of Instrument: Rights Acquired by Transfer] 810 ILCS 5/3-204 [Indorsement] 810 ILCS 5/3-205 [Special Indorsement; Blank Indorsement; Anomalous Indorsement].

[15] On January 19, 2016, Citi Mortgage filed proof of claim documents in the Bankruptcy Court. Among the aforesaid documents was a note, identical to the Adjustable Rate Note attached to the Complaint to Foreclose Mortgage, however, containing a special endorsement to Citi Mortgage.

[16] Jackson argues that the note, bearing the special indorsement, is legally questionable because it is offered more than 5 years subsequent to the initial filing of the instant foreclosure action; that at no time during the pendency of this foreclosure action did Citi

-4-

Mortgage file any pleadings or moving papers alleging the existence of a note bearing a special indorsement; Citi Mortgage did not file a lost note affidavit and rather than file this alleged Adjustable Rate Note, bearing a special endorsement to Citi Mortgage, in Will County Chancery Court, Citi Mortgage filed the note in the United States Bankruptcy Court, in the Northern District of Illinois, Eastern Division. The questions are conspicuous: why did Citi Mortgage file this note in bankruptcy court rather than in Chancery Court? Where did this note come from?

[17] When did Citi Mortgage know it had a note with a special endorsement to itself? Is the note the original, containing the wet ink signatures of the payer and payee? On what date did Argent Mortgage Company initiate the special endorsement to Citi Mortgage?

[18] Pursuant to the Uniform Commercial Code Article 3, Section 407 [Alteration] Jackson argues that the instant Adjustable Rate Note, filed in the United States Bankruptcy Court, by Citi Mortgage on January 19, 2015, bearing a special endorsement to Citi Mortgage, evidence indicia of alteration as that term is defined in Section 407:

407(a) "Alteration" means (i) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party.

[19] A material alteration is an addition or deletion of the language of an instrument, which changes the obligations of any party to it. A defendant may avoid liability for payment of a commercial paper if its terms have been materially altered.

[20] Jackson re-alleges that when Citi Mortgage initiated the instant foreclosure action it did not disclose that Jackson's mortgage loan had been securitized into the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2.

[21] Jackson argues that Citi Mortgage's refusal and/or failure to disclose that his mortgage loan had been securitized was an intentional and calculated artifice to conceal the identity of the legal note holder: U.S. Bank N.A. As an entity originating and brokering mortgage loans, Citi Mortgage should be charged with knowledge that the securitization of a mortgage loan legally transfers the note and assigns the mortgage to the trustee of the trust and in this instance the trustee is U.S. Bank N.A.

[22] Citi Mortgage acknowledged that U.S. Bank was the assignee and note holder when it executed the March 17, 2014, Corrective Assignment of Mortgage delineating the following transaction language:

"MERS, as nominee for Citi Mortgage, assigns Jackson's mortgage loan to the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2" [U.S. Bank National Association is stated to be the Trustee and Assignee].

The Corrective Assignment of Mortgage further states:

"this assignment is being recorded to correct the Assignee and Assignor Names on a previously recorded assignment dated March 16, 2010 recorded April 01, 2010 as Instrument Number R2010033617; Original Beneficiary: Argent Mortgage Company, LLC; Originally Recorded On: 10/30/2006; and that the subject property is at 2852 Stonewater Drive, Naperville, Illinois." [See attached Corrective Assignment of Mortgage, Dated March 17, 2014, Exhibit D].

[23] Jackson argues that the aforesaid Corrective Assignment provides dispositive documentary evidence that Citi Mortgage knew full well that it was not the note holder nor assignee of the mortgage when it commenced the August of 2010, foreclosure action. Moreover, the evidence of securitization also evidence that when Citi Mortgage filed the note, bearing the special indorsement to itself, it knew full well that it was not the note holder; that it had no principal/agent relationship with U.S. Bank and finally, that it was not the servicer of Jackson's mortgage loan-as Wells Fargo Bank is the servicer of the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2.

It is worth noting that in Chancery Court, Citi Mortgage, in response to Jackson's Section 5/2-1401, Motion, alleged that it was the servicer of Jackson's mortgage loan and that Jackson knew that Citi Mortgage was the servicer. In Chancery Court Jackson produced the Pooling and Servicing Agreement [PSA] of the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2 which established that Wells Fargo was the servicer of Jackson's mortgage loan.

[24] Therefore, Jackson respectfully moves the Court for a judgment finding that Citi Mortgage is not the note holder nor assignee of the mortgage; and for Declaratory Relief Quieting Citi Mortgage's  claim of interest in the subject property located at 2852 Stonewater Drive, Naperville, Illinois 60564.

## JACKSON'S ARGUES THAT THE ASSIGNMENT OF MORTGAGE DEED DATED FEBRUARY 11, 2009 IS IN VIOLATION OF THE ILLINOIS RESIDENTIAL MORTGAGE LICENSE ACT 205 ILLINOIS COMPILED STATUTES 635/1-3(a)

No person, partnership, association, corporation or other entity shall engage in the business of brokering, funding, originating, servicing or purchasing of residential mortgage loans without first obtaining a license from the Secretary in accordance with the licensing procedure provided in this in this Article I and such regulations as may be promulgated by the Secretary.

[25] During the pending foreclosure action, Citi Mortgage introduced an Assignment of Mortgage Deed dated February 11, 2009. The assignment alleged the following transaction:

"On February 11, 2009, Citi Residential as Attorney-in-Fact for Argent Mortgage Company LLC, assigns Jackson's mortgage to Mortgage Electronic Registration Systems [MERS] as nominee for Citi Mortgage." [See attached Assignment of Mortgage Deed, Exhibit B].

[26] Jackson argues that the aforesaid assignment is void ab initio predicated on the following material facts:

-7-

(a) Jackson states that on March 23, 2015, he contacted the Illinois Department of Financial and Professional Regulation, by telephone, and inquired as to whether Argent Mortgage Company held the residential mortgage license in 2009 and the timeline in which Citi Residential held the Mortgage License.

(b) The Illinois Department of Financial and Profession Regulation advised Jackson that Argent Mortgage Company obtained the Illinois Residential Mortgage License in 2002, and surrendered the license on December 17, 2007; and that the Mortgage License was scheduled to expire on July 31, 2008. [ See attached Argent's Mortgage License Expiration, Exhibit E].

(c) Jackson was also advised that Citi Residential has never been a Licensee pursuant to the Illinois Residential Mortgage License Act.

(d) Jackson states that the Assignment of Mortgage Deed dated February 11, 2009, is void as a matter of law because on the date that Citi Residential is acting as Attorney-in-Fact for Argent Mortgage Company-Argent was not a licensee pursuant to the Illinois Residential Mortgage License Act- as Argent surrendered its mortgage license on December 17, 2007; and Citi Residential never held the mortgage license and therefore could not legally participate in the brokering of the February 11, 2009, assignment. [See attached Document from Illinois Department of Financial and Professional Regulation, Exhibit E].

(e) Further, the alleged attorney-client relationship between Argent and Citi Residential is not evidenced by a principal-agent written document [Power of Attorney]nor was such a document attached to the assignment as required by law.

(f) On December 4, 2008, Citi Residential processed Jackson's application for a loan modification and prepared a loan modification agreement dated December 4, 2008. [See attached Loan Modification Agreement, Exhibit F].

(g) Citi Residential violated the Illinois Residential Mortgage License Act when it engaged the processing of Jackson's loan modification application.

205 Illinois Compiled Statutes 635/1-2(yy):

"Loan modification" means, for compensation or gain, either directly or indirectly offering or negotiating on behalf of a borrower or homeowner to adjust the terms of a residential mortgage loan in a manner not provided for in the original or previously modified mortgage loan."

The foregoing definition of loan modification and Citi Residential's processing of Jackson's loan modification application, falls squarely within the mortgage loan activities described in the Illinois Residential Mortgage Loan Act 205 ILLINOIS COMPILED STATUTES 635/1-3(a) and requiring the mortgage license to perform:

"No person, partnership, association, corporation or other entity shall engage in the business of brokering, funding, originating, servicing or purchasing of residential mortgage loans without first obtaining a license from the Secretary in accordance with the licensing procedure provided in this in this Article I and such regulations as may be promulgated by the Secretary."

(h) Examination of the Assignment of Mortgage Deed dated February 11, 2009, states that "Citi Residential, as Attorney-in-Fact for Argent Mortgage Company assigns the mortgage to MERS [Mortgage Electronics Registration Systems]."

(i) Moreover, during the timeline of September of 2007, through February of 2009, Citi Residential serviced Jackson's mortgage loan collecting approximately $1,666.43 in monthly mortgage payments for a total of $26,662.88. The Illinois Mortgage License Act prohibits "the servicing and purchasing of residential mortgage loans" by a non licensee.

-9-

The Illinois Appellate Court held in *First Mortgage Co. v. Dina*, 2014 IL App (2d) 130567:

"No Illinois decision directly addresses unlicensed mortgage lending. Defendants cite an apposite decision, *Carter-Shields*, which concerns unlicensed corporate practice of medicine."

"A similar decision with a rationale stated in terms that are more directly applicable is *Chatham Foot Specialists, P.C. v. Health Care Service Corp.*, 216 Ill. 2d 366 (2005). In *Chatham*, the supreme court stated:

"It is well settled that 'courts will not aid a plaintiff who bases his cause of action on an illegal act.' [Citation.] More specifically, 'courts will not enforce a contract involving a party who does not have a license called for by legislation that expressly prohibits the carrying on of the particular activity without a license where the legislation was enacted for the protection of the public, not as a revenue measure." [Citations.]

"Accordingly, a 'contract made by an unlicensed individual calling for his personal services *** is unenforceable.' [Citations.]"

"On numerous occasions, Illinois courts have held that where a licensing requirement has been enacted not to generate revenue, but rather to safeguard the public by assuring them of adequately trained practitioners, the unlicensed party may not recover fees for services or otherwise enforce a contract. [Citations.]" *Chatham*, 216 Ill. 2d at 380-81."

"The License Act was enacted to protect the public, and not to generate revenue. Section 1-2(b) (205 ILCS 635/1-2(b) (West 2006)) states that "[t]he purpose of this Act is to protect Illinois consumers seeking residential mortgage loans and to ensure that the residential mortgage lending industry is operating fairly, honestly and efficiently, free from deceptive and anti-competitive practices."

-10-

" The majority of states that have addressed the enforceability of mortgages made by unlicensed mortgage lenders have concluded that they are void as against public policy and so unenforceable. In *Solomon v. Gilmore*, 731 A.2d 280 (Conn. 1999), the Connecticut Supreme Court considered that issue while addressing a statute that, like ours, did not explicitly address enforceability."

"In language notably similar to that in *Chatham*, it held that a court could not assist in the enforcement of a contract the purpose of which is to violate the law. *Solomon*, 731 A.2d at 289."

[27] Jackson argues that the assignment of a mortgage like the transfer or negotiation of a note constitutes the purchase of the mortgage loan. Because the note and mortgage cannot be separated, purchase of the mortgage also constitutes the transfer of the note.
The note is evidence of the mortgage loan and when transferred or negotiated constitutes the purchasing of a mortgage loan.
The assignment of mortgage assigns the security lien and the security lien securitizes the note and the mortgage follows the note. Therefore, the assignment of the mortgage actually transfers the note-as the doctrine of the mortgage follows the note means that the assignee and transferee are legally considered the same entity notwithstanding the fact that they may actually be different entities. Jackson argues that assigning a mortgage is tantamount to purchasing the note which meets the "servicing or purchasing of residential mortgage loans" language in the Illinois Mortgage License Act.

[28] Jackson argues that Citi Residential alleged standing to execute the February 11, 2009, assignment rests with their principal/agent relationship with Argent Mortgage Company as Attorney-in-Fact.

[29] However, Argent Mortgage Company surrendered their mortgage license in 2007, and therefore, did not have the legal privilege to assign the instant mortgage either personally or through their agent, Citi Residential.

-11-

[30] Jackson argues that an assignment of mortgage falls squarely within the activities requiring a mortgage license because the mortgage follows the note, securitizes the note and is the enforcement arm of the mortgage loan. Jackson respectfully argues that during the approximate timeline of September of 2007, through February of 2009, he made monthly mortgage payments of $1,666.43 to Citi Residential for a total of $26,662.88.   Citi Residential's servicing of Jackson's mortgage loan violates the Mortgage License Act.

## JACKSON'S ARGUES THAT THE ASSIGNMENTOF MORTGAGE DATED MARCH 16, 2010 AND RECORDED APRIL 1, 2010 IS VOID AB INITIO

[31] The Assignment of Mortgage, dated March 16, 2010 and recorded on April 1, 2010, represents MERS as the assignor and MERS assigns said Mortgage to CitiMortgage, Inc. Again, the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2 is not contained on the face of this Assignment of Mortgage and is not mentioned or alluded to in Citi's pleadings or moving papers. [See attached Assignment of Mortgage, Exhibit C].

[32] Jackson argues that the aforesaid assignment is void ab initio predicated on the fact that Jackson's mortgage loan loan was securitized into the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2 and therefore MERS had no illegal right to assign the mortgage to Citi Mortgage.

[33] Jackson further argues that his position is not that the aforesaid assignment is invalidate, ineffective or otherwise voidable; rather, the Jackson's argument is that MERS was not the assignor because it had no interest in the subject mortgage, was not the nominee or agent of any entity, and because the mortgage loan had been securitized into the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2, and as a consequence thereof only U.S. Bank N.A. as Trustee of the aforesaid Trust had standing to commence the instant foreclosure action.

[34] Jackson has standing to raise this issue because under the note he is obligated to re-pay only the lender, his legal successor or assign. Re-paying the mortgage loan to an entity having no standing to enforce the obligations under the note, prejudice Jackson's obligations under the note and exposes him to a double re-payment: the legal holder of the indebtedness and the entity representing itself to be the legal holder of the indebtedness.

[35] Therefore, for the foregoing reasons Jackson respecting moves the Court for a Judgment that MERS did not have a legal interest in the subject property when it assigned Jackson's residential property on March 16, 2010; that said assignment represents a hiatus in the chain of title; and for Declaratory Relief finding that the March 16, 2010, did not legally assign Jackson's mortgage.

**JACKSON ARGUES THAT THE CORRECTIVE ASSIGNMENT OF MORTGAGE DATED MARCH 17, 2014, EVIDENCE THAT CITI MORTGAGE KNEW FULL WELL THAT IT WAS NOT THE NOTE HOLDER OR ASSIGNEE OF THE MORTGAGE; AND KNEW FULL WELL THAT JACKSON'S MORTGAGE LOAN HAD BEEN SECURITIZED INTO THE Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2 WHEN IT INITIATED THE SUBJECT FORECLOSURE ACTION**

[36] As a preliminary matter, Jackson states that Citi Mortgage did not file the Corrective Assignment of Mortgage in the Will County Chancery Court rather Citi Mortgage recorded it with the Will County Recorder.

[37] In or around March of 2014, Jackson, while searching the Will County Recorder Data Base, found and printed out the Corrective Assignment of Mortgage and filed it with the Will County Chancery Clerk.

[38] The March 17th, 2014, Corrective Assignment of Mortgage describes the following transactions on its face: MERS, as nominee for Citi Mortgage, assigns Jackson's mortgage loan to the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2; U.S. Bank National Association is stated to be the Trustee and Assignee:

"this assignment is being recorded to correct the Assignee and Assignor Names on a previously recorded assignment dated March 16, 2010 recorded April 01, 2010 as Instrument Number R2010033617;
Original Beneficiary: Argent Mortgage Company, LLC; Originally Recorded On: 10/30/2006; and that the subject property is at 2852 Stonewater Drive, Naperville, Illinois." [See attached Corrective of Mortgage, Exhibit D].

[39] Jackson states that the assignment transaction delineated on the face of the Corrective Assignment is curious to say the least. For example, the transaction language states:

"MERS, as nominee for Citi Mortgage, assigns Jackson's mortgage loan to the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2; U.S. Bank National Association is stated to be the Trustee and Assignee."

[40] Reading the aforesaid transaction, the only logical conclusion is that Citi Mortgage filed a corrective assignment evidencing that it is not the assignee of the mortgage; rather, the transaction language specifically states that MERS, as nominee for Citi Mortgage, assigns the mortgage to the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2; U.S. Bank National Association is stated to be the Trustee and Assignee.

[41] In addition, the corrective assignment also states that:

"this assignment is being recorded to correct the Assignee and Assignor Names on a previously recorded assignment dated March 16, 2010 recorded April 01, 2010 as Instrument Number R2010033617; Original Beneficiary: Argent Mortgage Company, LLC;

-14-

Originally Recorded On: 10/30/2006; and that the subject property is at 2852 Stonewater Drive, Naperville, Illinois."

[42] What is meant by the statement that the assignment is being recorded to correct the Assignee and Assignor Names on a previously recorded assignment dated March 16, 2010, recorded April 1, 2010.

[43] The March 16, 2010, assignment states that MERS assigns the mortgage to Citi Mortgage: therefore, the assignor is MERS, and the assignee is Citi Mortgage.

The corrective assignment states that it is being recorded to correct the assignee and assignor names on the March 16, 2010, assignment. Jackson states that the correction is not explained; one can infer that the correction involves changing the name of the assignor and assignee; but why would that be necessary?

[44] For sake of illustration, assume that the corrective assignment endeavors to change the name of the assignor to MERS, as nominee for Citi Mortgage, and change the name of the assignee to the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2; and to U.S. Bank National Association as Trustee.

[45] Such a correction would forward the allegation that Citi Mortgage is not the assignee of the instant mortgage. Further, such a correction would establish that the instant mortgage was securitized in 2010, which would mean that the note and mortgage was somehow remove from the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2 and then re-securitized in 2010.

[46] Jackson argues that it is suggestive of fraud, concealment and substantive alteration to file a corrective assignment that completely changes the names of the assignor and assignee on the March 16, 2010, Assignment of Mortgage; and completely changes the actual transaction language of that assignment.

-15-

[47] Jackson respectfully argues that the aforesaid corrective assignment actually establishes that Citi Mortgage is not the holder of the indebtedness, not the assignee, not the server, and not the legal party in interest; and therefore, has no standing to prosecute the instant foreclosure action.

[48] Jackson further argues that if the Assignor and Assignee Names are changed or corrected that would also require that the assignment transaction language shown on the face of the March 17, 2014, Corrective Assignment of Mortgage be transferred to the March 16, 2010, Assignment of Mortgage.

[49] Jackson argues that the March 17, 2014, Corrective Assignment of Mortgage is quite revealing: in a display of utter contempt for common sense and credibility, the Corrective Assignment not only attempts to change the Assignor and Assignee Name on the March 16, 2010, Assignment of Mortgage but also replace the assignment transaction language shown on the face of the March 16, 2010, assignment with an assignment transaction language that states: MERS, as nominee for Citi Mortgage assigns the mortgage to the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2. Hence, Citi Mortgage does not request that the Court allow him to correct or repair the wheel but rather to reinvent the wheel.

## RELIEF

[50] Jackson respectfully moves the Court for a Judgment of Void Ab Initio relative to the assignments dated February 11, 2009 [Assignment of Mortgage Deed]; March 16, 2010 [Assignment of Mortgage] and March 17, 2014 [Corrective Assignment of Mortgage].

[51] That the Court declare that the Adjustable Rate Note bearing no blank indorsement and the Adjustable Rate Note bearing a special indorsement to Citi Mortgage void ab initio.

-16-

[52] That Jackson's mortgage loan was securitized into the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2, sometime in 2007 or early 2008.

[53] That the Judgments and Declarations of void ab initio, relative to the Adjustable Rate Note(s) and Assignments trigger the doctrine of res judicata.

[54] That Citi Mortgage never moved the Court to substitute U.S. Bank National Association as Creditor and therefore, Citi Mortgage and U.S. Bank's apparent co-authorship and co-movant status relative to their Motion for Relief from Automatic Stay should be denied nunc pro tunc-as Citi Mortgage is not the lien holder; is not the note holder; is not the assignee, party in interest, holder of the indebtedness nor innocent bystander.

[55] Jackson moves the Court for a Judgment and Declaration finding that Citi Mortgage engaged artifice and skullduggery, in concealing the material fact that Jackson's mortgage loan had been securitized into the Citigroup Mortgage Loan Trust, Inc., Asset Backed Pass-Through Certificates Series 2007-AMC2, which effectively concealed the identity of the legal note holder and assignee of the mortgage.

[56] That Citi Mortgage's January 19, 2015, filing, in Bankruptcy Court, of an Adjustable Rate Note bearing a special indorsement to itself some 5 years after its initiation of the subject foreclosure action, is troublesome and suggest fraud by concealment.

[57] That Citi Mortgage has, since the commencement of the subject foreclosure action, engaged in a pattern of deception, artifice and skullduggery, in an exhaustive attempt to enforce a note and security it had no demonstrated legal interest in.

WHEREFORE, Jackson respectfully moves the Court for a Judgment and Declaration consistent with the requested relief.

Respectfully Submitted,

Harvey C. Jackson, Jr.
Pro Se

-17-

# EXHIBIT

# A

.../14 10:50:06 WCCA
04/19/10 13:38:58 WCCH

Loan Number: 0103505830 - 9701

## ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

October 10, 2006                 Rolling Meadows                IL
Date                             City                          State

2852 STONEWATER DR, NAPERVILLE, IL 60564
Property Address

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 192,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Argent Mortgage Company, LLC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.850 %. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on   December 1, 2006 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, November 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my payments at  — 505 City Parkway West, Suite 100, Orange, CA 92868 — — — — — — — —

or at a different place if required by the Note Holder.
**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ 1,258.10. This amount may change.
**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of, November, 2008  and on that day every  six  month thereafter. Each date on which my interest rate could change is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding  four and one-half percentage point(s) (4.500%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials: _____

05/28/14 10:50:06 WCCA
04/19/10 13:38:58 WCCH

(D) Limits on Interest Rate Changes

Loan Number: 0103505830 - 9701

The interest rate I am required to pay at the first Change Date will not be greater than 8.850 % or less than 6.850%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) 1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.850 % or less than 6.850 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. PREPAYMENT PRIVILEGE

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

(A) Application of Funds

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

(B) Monthly Payments

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payment

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder.
The amount of the charge will be 5.000 % of my overdue payment of principal and interest.
I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials: HJ

W.C.C.H.   10/02/09 2010

WCCA   05282014

05/28/14 10:50:07 WCCA
04/19/10 13:38:58 WCCH

Loan Number: 0103505830-9701

9:   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                              _____ (Seal)
Borrower  HARVEY C JACKSON, Jr.                                      Borrower

_____ (Seal)                              _____ (Seal)
Borrower                                                            Borrower

201-DU-EV (Rev 02/02)                              3 of 3 -

# EXHIBIT

# B

05/28/14 10:50:16 WCCA

R2009025195_1

When Recorded Return To:
CITI RESIDENTIAL LENDING INC.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL-34683

CRL L#: 9000142894
CMI L#: 9000142894
Investor L#: 0221872191
Custodian: 304
Effective Date: 02/11/2009

R2009025195
Receipt # T20090026560
Karen A. Stukel --- Will County Recorder  2P
LR      Date 03/03/2009            Time 14:38:56
Recording Fees:                                    $24.75
IL Rental Hsng. Support Program:                   $10.00

## ASSIGNMENT OF MORTGAGE/DEED

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 10801 E. 6TH STREET , RANCHO CUCAMONGA, CA 91730, (ASSIGNOR)**, by these presents does convey, grant, sell, assign, transfer and set over the described mortgage/deed of trust together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') A DELAWARE CORPORATION, ITS SUCCESSORS OR ASSIGNS, AS NOMINEE FOR CITIMORTGAGE INC. PO BOX 2026, FLINT, MI 48501, (ASSIGNEE)**. Said mortgage/deed of trust dated 10/10/2006 , and made by **HARVEY C. JACKSON JR.** to **ARGENT MORTGAGE COMPANY, LLC** and recorded in the Recorder or Registrar of Titles of WILL County, Illinois in Book  Page   as Instr# R 2006182217  upon the property situated in said State and County as more fully described in said mortgage or herein to wit:

SEE ATTACHED EXHIBIT A

**07-01-03-308-1003**
known as: 2852 STONEWATER DR. NAPERVILLE, IL 60564
01/13/2009
**CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC**
POA RECORDED: 11/20/2007 DOC#:R2007-168156

BY:
        CRYSTAL MOORE VICE PRESIDENT

STATE OF FLORIDA          COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me THIS 13TH DAY OF JANUARY IN THE YEAR 2009, by CRYSTAL MOORE of CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC on behalf of said CORPORATION.


BRYAN J. BLY
My commission expires:07/01/2011

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691055
Expires July 01, 2011
Bonded Through National Notary Assn.

**Document Prepared By:** Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

CRLAS 9320778  12/31 CRL CJ2020807  MIN 100011590001428940 MERS PHONE 1-888-679-MERS form5/FRMIL1

*9320778*

# 1 OF 2

R2009025195_2

*The land referred to in this Commitment is described as follows:*

UNIT 93, IN STONEWATER CONDOMINIUM, TOGETHER WITH AN UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, AS DELINEATED ON THE SURVEY ATTACHED THERETO AND MARKED EXHIBIT "A" TO THE DECLARATION OF CONDOMINIUM OWNERSHIP RECORDED MAY 18, 1998 AS DOCUMENT NO. R98-54389 AND 11TH AMENDMENT RECORDED October 6, 1999 AS DOCUMENT NO. R99-122867, AS AMENDED OF LOT 9 IN STONEWATER, BEING A SUBDIVISION OF PART OF THE SOUTHWEST QUARTER OF SECTION 3, TOWNSHIP 37 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN IN WILL COUNTY, ILLINOIS.

FOR INFORMATION ONLY: 07-01-03-308-018-1003

2852 STONEWATER DRIVE, NAPERVILLE IL 60564

PLEASE NOTE: THE PROPERTY ADDRESS AND ZIP CODE ARE PROVIDED FOR CONVENIENCE ONLY.

# EXHIBIT

# C

R2010033617
Receipt # T20100038050

Karen A. Stukel    Will County Recorder    1P
DB        Date 04/01/2010                        Time 13:42:46
Recording Fees:                                              $24.75
IL Rental Hsng. Support Program:                       $10.00

Loan No. 9000142894

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation,   whose mailing address is %CitiMortgage, Inc., 1000 Technology Drive., O'Fallon, MO 63368-2240, herein designated as the Assignor, for and in consideration of the sum of TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto CitiMortgage, Inc., whose mailing address is 1000 Technology Drive, O'Fallon, MO 63368-2240, herein designated as the Assignee, that certain Mortgage bearing the date, OCTOBER 10, 2006, made by HARVEY C JACKSON, JR., and recorded on 10/30/06, as Document Number R2006182217, with the WILL County Recorder, WILL, Illinois, upon the following described parcel of land situated in WILL County, State of Illinois, to wit:

UNIT 93, IN STONEWATER CONDOMINIUM, TOGETHER WITH AN UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, AS DELINEATED ON THE SURVEY ATTACHED THERETO AND MARKED EXHIBIT "A" TO THE DECLARATION OF CONDOMINIUM OWNERSHIP RECORDED MAY 18, 1998 AS DOCUMENT NO. R98-54389 AND 11TH AMENDMENT RECORDED October 5, 1999 AS DOCUMENT NO. R99-122867, AS AMENDED OF LOT 9 IN STONEWATER, BEING A SUBDIVISION OF PART OF THE SOUTHWEST QUARTER OF SECTION 3, TOWNSHIP 37 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN IN WILL COUNTY, ILLINOIS.

Common Address: 2852 STONEWATER DR, NAPERVILLE, IL 60564
Tax Number: 07-01-03-308-018-1003

together with the Note or obligation described in said Mortgage, and the money due and to become due thereon, with interest.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns forever.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation

BY: _____
Scott Scheiner, Vice President

ATTEST:
_Alex D Cossman_
Authorized Agent

Subscribed and sworn to before me on    MAR 1 6 2010

_____
Notary Public

PREPARED BY: 3 Return
Attorney No. 18837
LAW OFFICES OF IRA T. NEVEL
175 North Franklin
Suite 201
Chicago, Illinois 60606
(312) 357-1125

DENNIS J. LUECKE
Notary Public - Notary Seal
State of Missouri
St. Charles County
Commission #08672763
My Commission Expires 11/04/2012

WCCA    05282014

# EXHIBIT

# D

05/28/14 10:50:19 WCCA

*Exhibits*

R2014024613_1

Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE, CA 91209-9071



**R2014024613**

Receipt # T20140007853

Karen A. Stukel    Will County Recorder    3P
LH        Date 03/27/2014        Time 15:38:23
Recording Fees:                              $45.75
IL Rental Hsng. Support Program:        $ 9.00

Prepared by:
JILL TYNER
CITIMORTGAGE, INC
1000 TECHNOLOGY DRIVE, MS 321
O'FALLON , MO 63368-2240

## CORRECTIVE ASSIGNMENT OF MORTGAGE

MERS SIS # 888-679-6377 MIN: 100011590001428940

KNOW ALL MEN BY THESE PRESENTS:

That Mortgage Electronic Registration Systems, Inc. as nominee for CitiMortgage, Inc. its successors and assigns , whose mailing address is P.O. Box 2026, Flint, MI, 48501-2026 , herein designated as the Assignor, for and in consideration of the sum of TEN and 00/00 ($10.00) DOLLARS and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, assign, and transfer, to CITIGROUP MORTGAGE LOAN TRUST INC. ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC2, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE , whose mailing address is  1000 Technology Drive, O'Fallon, MO, 63368 , herein designated as the Assignee, its rights in that certain mortgage executed by Harvey C Jackson, Jr , dated 10/10/2006 , Originally Recorded On: 10/30/2006  and recorded in Official Records Book: NA Page: NA Instrument No: R 2006182217, of the Public Records Will County, Illinois and encumbering the property more particularly described as follows:
Description/Additional information: See Exhibit A
Parcel ID#: 07-01-03-308-018-1003

Property Address: 2852 Stonewater Dr, Naperville, IL, 60564

TO HAVE AND TO HOLD the same unto the said Assignee.

This assignment is being recorded to correct the Assignee and Assignor Names on a previously recorded assignment from Mortgage Electronic Registration Systems, Inc. to CitiMortgage, Inc. dated March 16, 2010 recorded April 01, 2010 as Instrument Number R2010033617
Original Beneficiary: Argent Mortgage Company, LLC

IN WITNESS WHEREOF, the said Assignor has caused these presents to be executed in its name,

on 03/17/2014 .

Mortgage Electronic Registration Systems, Inc. as nominee for CitiMortgage, Inc. its successors and assigns

By: Jill Tyner
Assistant Secretary

WCCA    05282014

Page # 1  42459850 RPY Ref# 787135 24449 JL197 Will County Internal

05/28/14 10:50:19 WCCA

R2014024613_2

STATE OF MISSOURI, ST. CHARLES COUNTY

On **March 17, 2014** before me, the undersigned, a notary public in and for said state, personally appeared **Jill Tyner, Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc. as nominee for CitiMortgage, Inc. its successors and assigns** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public Alexandra Barczewski

Commission Expires: 07/25/2016

ALEXANDRA BARCZEWSKI
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: July 25, 2016
Commission Number: 12372456

## Exhibit A

UNIT 93, IN STONEWATER CONDOMINIUM, TOGETHER WITH AN UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, AS DELINEATED ON THE SURVEY ATTACHED THERETO AND MARKED EXHIBIT "A" TO THE DECLARATION OF CONDOMINIUM OWNERSHIP RECORDED MAY 18, 1998 AS DOCUMENT NO. R98-54389 AND 11TH AMENDMENT RECORDED October 6, 1999 AS DOCUMENT NO. R99-122867, AS AMENDED OF LOT 9 IN STONEWATER, BEING A SUBDIVISION OF PART OF THE SOUTHWEST QUARTER OF SECTION 3, TOWNSHIP 37 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN IN WILL COUNTY, ILLINOIS.

FOR INFORMATION ONLY: 07-01-03-308-018-1003

2852 STONEWATER DRIVE, NAPERVILLE IL 60564

PLEASE NOTE: THE PROPERTY ADDRESS AND ZIP CODE ARE PROVIDED FOR CONVENIENCE ONLY.

# EXHIBIT

# E

Bryan A. Schneider, Secretary

[back]

## Agency Quick Links

**IDFPR Home Page**
Información Disponible
En Español
License Look Up
Physician Profile
License Renewals
Latest News
Discipline Information
Consumers
Professionals

### Information About

IDFPR
Banking
Financial Institutions
Professional Regulation

### About IDFPR

Contact Information
General FAQs
Boards & Committees
**Search IDFPR.com**

[ Search ]

## Name and Address

| | |
|---|---|
| **Name** | Argent Mortgage Company, LLC |
| **Public Address** | Argent Mortgage Company, LLC<br>1701 Golf Road, Suite 700<br>Rolling Meadows, IL 60008 |
| **Mail Address** | Argent Mortgage Company, LLC<br>1701 Golf Road, Suite 700<br>Rolling Meadows, IL 60008 |

## License and Registration Information

| License | Contact | Contact Phone | Issue Date | Expiration Date | Status | Reason |
|---|---|---|---|---|---|---|
| MB.0006578-002 | Sam Marzouk<br>1701 Golf Road, Suite 700<br>Rolling Meadows, IL 60008 | (847) 690-0517 | 10/14/2003 | 07/31/2008 | INACTIVE | SURRENDERED |

Exhibit 5

Copyright 1999-2003. All Rights Reserved by CAVU Corporation

# EXHIBIT

# F

RECORD AND RETURN TO:
Citi Residential Lending, Inc.
10801 E.6th Street Attn: Loan Modification Unit
Rancho Cucamonga, CA 91730

——————————— [Space Above This Line for Recording Data] ———————————

## LOAN MODIFICATION AGREEMENT
### (Providing for Capitalization, Life of Loan Interest Rate Reduction on Adjustable Loan)

**Original Note Amount:** $ 192,000.00
**Original Recorded Date:** October 30, 2006

This Loan Modification Agreement ("Agreement"), made this 4th day of December, 2008 , between
Harvey C. Jackson, Jr., An Unmarried Man


("Borrower(s)") and
("Servicer") acting in its capacity as the agent and attorney-in-fact for the owner of the Note and Security
Interest, amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument"), and applicable Rider(s), if any, dated          October 10, 2006          and recorded as
Instrument/Document No:     2006182217     , Book No.   N/A   , Page No.     N/A     in the
Official Records                          of                    Will                County,
State of          Illinois          and (2) the Note, bearing the same date as, and secured by,
the Security Instrument, which covers the real and personal property described in the Security Instrument
and defined therein as the "Property", located at
2852 Stonewater Dr.
Naperville, IL 60564

Rev. 08/08                          Page 1 of 4

The real property described being set forth as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. As of _____ January 1, 2009 _____ the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") in U.S. $ 194,204.55 _____, consisting of the unpaid amount(s) loaned to Borrower(s) plus any interest and other amounts capitalized.

2. Delinquent interest accrued and capitalized (i.e., added to the outstanding principal balance) in the modified loan principal balance is $ 5,629.44 _____. Other charges (if any) accrued and capitalized are $ 0.00 _____. Delinquent interest and other charges (if any) accrued but not capitalized are $ 377.46

3. Servicer agrees to reduce the interest rate on this loan for the remaining term. Interest will be charged at this reduced rate on the newly capitalized Unpaid Principal Balance.

4. When box is checked below Borrower agrees that payments for:

   ☐ hazard insurance premiums          ☐ real property taxes
   ☐ flood insurance premiums           ☐ mortgage insurance premiums

   may be escrowed throughout the term of the loan and paid by borrower to the Servicer with the monthly Principal and Interest payment. Within 45 days of the completion of the Modification Agreement, borrower will receive an Escrow Analysis Statement, which outlines which items will be escrowed and included in the monthly mortgage payment.

   If no boxes are checked above Borrower will be responsible for paying directly to the tax collector or insurance vendor all installments and premiums.

5. The monthly payment will adjust as follows:

| INTEREST CHANGE DATE | INTEREST RATE | PAYMENT DUE DATE | MONTHLY P & I | ESCROW* AMOUNT | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|
| 01/01/2009 | 5.000 % | 02/01/2009 | $ 1,078.02 | $ 0.00 | $ 1,078.02 |

*Borrower(s) will be notified in writing if there are any changes in the escrow payments.

If on _____ November 1, 2036 _____ (the "Maturity Date"), Borrower(s) still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower(s) will pay these amounts in full on the Maturity Date.

Borrower(s) will make such payments to Citi Residential Lending Inc, ATTN: Cashiering Department, First Floor, 1600 McConnor Parkway, Schaumburg, Illinois 60173-6800 or at such other place as Servicer may require.

6. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower(s) is not a natural person and a beneficial interest in Borrower(s) is sold or transferred) without Servicer's prior written consent, Servicer may require immediate payment in full of all sums secured by the Security Instrument.

If Servicer exercises this option, Servicer shall give Borrower(s) notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower(s) must pay all sums secured by this Security Instrument. If Borrower(s) fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower(s).

Rev. 08/08                                    Page 2 of 4

7.  If the Borrower(s) has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy and there having been no valid reaffirmation of the underlying debit, by entering into this Agreement, the Servicer is not attempting to re-establish any personal liability for the underlying debt.

    **If Chapter 13 bankruptcy has been filed and a Motion for Relief of Stay has been granted to Citi Residential Lending Inc., this Agreement is contingent on Trustee approval. The approval will be required with the executed, notarized Agreement and wire confirmation. Failure to provide the Trustee's approval will result in this Agreement being rescinded.**

8.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower(s) and Servicer will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

9.  The yearly rate of interest applicable to the Loan prior to execution of this Modification Agreement shall apply after any default under the terms of the Note, Security Instrument or this Modification Agreement.

10. Effective as of the date of this Modification Agreement, the principal indebtedness evidenced by the Note and this Modification Agreement will include any amounts for escrow payments advanced by Servicer on Borrower(s)'s behalf and for delinquent interest accrued in accordance with the terms of the Note.

11. Except as expressly modified by this Modification Agreement, all terms of the Note and Security Instrument remain in full force and effect. By signing below, Servicer and Borrower(s) acknowledge there are no additional terms or agreements, oral or written. By this Agreement, any assumability, convertibility or balloon provision is hereby rescinded.

12. This Modification Agreement does not constitute a limitation or waiver of Servicer's rights to prohibit, or restrict, any future modifications requested by Borrower(s) or to enforce any rights or remedies contained in the Note and Security Instrument.

13. If any terms of this Modification Agreement are deemed invalid or unenforceable, this Modification Agreement shall immediately terminate and the original terms of the Note and Security Instrument shall apply to the Loan.

14. By executing this Agreement, Borrower(s) waives any prior modifications, forbearance agreements or other rate reduction to which Borrower(s) may be otherwise entitled. Borrower(s) further releases and discharges Servicer from any and all claims that occurred prior to the date of this modification of any kind or nature, arising out of or related in any manner to the origination or servicing of the loan. Furthermore, Borrower(s) hereby state that they have read, understand and acknowledge that they are familiar with Section 1542 of the California Civil Code (and any similar provision of law), which section provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

15. By executing this Agreement, Borrower(s) asserts that this property is         owner occupied         ;
that the Borrower(s) has the ability repay the loan under the terms of this modification; and, without this
modification the Borrower(s) will suffer a hardship as a result of an increase in the payment amount
under the original terms of the Note and Security Instrument.

16. The undersigned Borrower(s) agree if requested by Servicer, or any agent of Servicer to fully cooperate
and adjust for clerical errors, any documentation connected with this Modifications deemed necessary
by the Servicer and to comply with any requests of the Servicer to execute additional documentation
within 30 days from the date of mailing such request.

SERVICER   AND   BORROWER(S)   AGREE   AND   ACCEPT   THE   TERMS   OF   THIS   MODIFICATION
AGREEMENT AS OF THE DATE FIRST ABOVE WRITTEN.

_____        12/18/08
Authorized Signer                                       Date
Citi Residential Lending, Inc.

_____   12/9/08    _____
Borrower(s)                                   Date    Borrower(s)                                   Date
Harvey C. Jackson Jr.

_____   _____    _____   _____
Borrower(s)                                   Date    Borrower(s)                                   Date

_____              _____
Witness                                                   Witness

Rev. 08/08                                       Page 4 of 4

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| HARVEY C JACKSON Jr | Citi Mortgage |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| | LAW OFFICES of IRA T Nevel 175 N Franklin Suite 201 CHICAGO, IL 60606 |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☑ Debtor   ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor   ☐ Other ☐ Trustee | ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin ☑ Creditor   ☐ Other ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☑ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☑ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☑ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

*FILED FEB 17 2016 JEFFREY P. ALLSTEADT, CLERK PS REP - CM UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF ILLINOIS*

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>_Harvey C Jackson Jr_ | BANKRUPTCY CASE NO.<br>_14-43765_ | |
| DISTRICT IN WHICH CASE IS PENDING<br>_Northern District of Illinois_ | DIVISION OFFICE<br>_Eastern_ | NAME OF JUDGE<br>_Black_ |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>_Harvey C Jackson Jr_ | DEFENDANT<br>_Citi Mortgage_ | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>_Harvey C Jackson Jr_ | | |
| DATE<br>_4-17-2016_ | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>_Harvey C Jackson Jr_ | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.